IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 7, 2019

**JEREMY P. DUNCAN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-18-250        Roy B. Morgan, Jr., Judge**

_____

**No. W2019-00021-CCA-R3-PC**

_____

A Madison County jury convicted the Petitioner, Jeremy P. Duncan, of two counts of aggravated assault, one count of possession of cocaine with the intent to sell, one count of possession of cocaine with the intent to deliver, two counts of possession of a firearm during the commission of a dangerous felony, one count of being a felon in possession of a handgun, and one count of tampering with the evidence.  The trial court imposed an effective twenty-four-year sentence.  The Petitioner appealed, and this court affirmed the convictions and sentence.  *See State v. Jeremy Peres Duncan*, No. W2017-00529-CCA-R3-CD, 2018 WL 1182579 (Tenn. Crim. App., at Jackson, Mar. 6, 2018), *perm. app. denied* (Tenn. June 8, 2018).  The Petitioner filed a post-conviction petition, claiming he received the ineffective assistance of counsel.  After a hearing, the post-conviction court denied relief.  The Petitioner appeals the denial, maintaining that his counsel was ineffective.  After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Jeremy P. Duncan.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

The underlying charges in this case were a result of two police officers in an unmarked car passing the Petitioner and his co-defendant, Corbyn Davis, walking down

the street. As they passed, the officers noticed a "bulge" in the Petitioner's waistband. When the officers made a U-turn and headed back in the Petitioner's direction, the Petitioner displayed a gun but then fled the scene once the officers identified themselves. After a short pursuit, the officers apprehended and arrested the Petitioner and Mr. Davis. A Madison County grand jury indicted the Petitioner for two counts of aggravated assault, one count of possession of cocaine with the intent to sell, one count of possession of cocaine with the intent to deliver, two counts of possession of a firearm during the commission of a dangerous felony, one count of being a felon in possession of a handgun, and one count of tampering with evidence. At trial, the jury convicted the Petitioner of the charged offenses.

The Petitioner appealed his convictions asserting that the evidence was insufficient to support his convictions for aggravated assault, possession of cocaine with the intent to sell and/or deliver, and possession of a firearm during the commission of a dangerous felony. The Petitioner also challenged evidentiary rulings regarding evidence of his gang affiliation and the trial court's imposition of consecutive sentences. This court affirmed the convictions and sentences. *Duncan*, 2018 WL 1182579 at \*1.

In October 2018, the Petitioner timely filed a petition seeking post-conviction relief based upon the ineffective assistance of counsel. At the hearing, the parties presented the following evidence: The Petitioner testified that Investigator Kelly Schrotberger's testimony at the preliminary hearing was inconsistent with his trial testimony and that his trial attorney ("Counsel") failed to address the inconsistencies at trial. The Petitioner recalled that, at the preliminary hearing, Investigator Schrotberger had testified that the Petitioner had pointed the gun at him; however, during cross-examination at trial Investigator Schrotberger testified that he was not sure if the Petitioner "pulled a gun" and that he had only seen a gun on the Petitioner's hip. According to the Petitioner, at trial the investigator stated that the Petitioner "pointed the gun but [he] didn't point it at [Investigator Schrotberger]."

The Petitioner testified that Counsel was also deficient for failing to call his co-defendant to testify that the drugs found in the Petitioner's possession were for personal use. The Petitioner explained that he was going through a difficult time and began using drugs as a result. He stated that the drugs he possessed at the time were not for sale but for personal use. The Petitioner also contended that Counsel prevented him from testifying at trial. The Petitioner recalled that Counsel told him "it was best for [him] not to get on the stand." The Petitioner said that Counsel warned him that, if he testified, the State could introduce his prior criminal history. The Petitioner believed that, "[a]t one point," he told Counsel he wanted to testify but that Counsel "advised" him not to testify due to his prior criminal history. The Petitioner stated that, had he had the opportunity, he would have testified to the following at trial:

Mr. Davis and [me] met up on Hatton Street and we was walking down the street. Two individuals in a car, you know, with they hats tilted, you know, rolled up on us, looked us up and down, rolled down the street and was coming back toward us, you know. We felt like they was fixing to do something to us, they was fixing to, you know, - - I basically felt like my life was in danger. So, - - But before they could get to me, I seen through the front windshield 'cause the - - you know, the front windshield of the car don't have no tint on it, and I seen that they vests and things said Police on it, so I was running. I was running at that time through a[n] alley. My Co-Defendant took off running wherever he went, and I threw my gun in the bushes and I jumped the fence. They caught me over under a car, you know. I never pulled a gun on anyone. I never assaulted anyone, period.

On cross-examination, the Petitioner testified that he bought the cocaine found in his possession from Mr. Davis, his co-defendant. The Petitioner agreed that when he first saw the police officers, who he believed were gang members, he unbuttoned his jacket to display his gun that was "on [his] hip." He agreed that he displayed the gun so that the individuals would not "mess" with him. About the offenses, the Petitioner agreed that he possessed a handgun as a convicted felon, evaded arrest, hid the handgun, and possessed cocaine; however, he asserted that the only reason he displayed the weapon to the officers was because he was in fear for his life. The Petitioner agreed that during the *Momon* hearing he testified that it was his decision not to testify at his trial.

Mr. Davis, the co-defendant, testified that he had known the Petitioner through mutual friends since he was fourteen years old. Mr. Davis recalled that on October 20, 2015, the Petitioner called him and asked to meet. They met on Hatton Street and walked as they discussed the Petitioner buying drugs from Mr. Davis. Mr. Davis stated that he knew the Petitioner to be a drug user. As they walked, a car pulled up next to them with what appeared to be gang members. Out of fear, the two men began running. Mr. Davis stated that the Petitioner did not point a gun at anyone.

On cross-examination, Mr. Davis testified that he and the Petitioner ran different directions so that he did not observe any of the Petitioner's actions once they began running. Mr. Davis reiterated that he was a drug dealer. Upon further questioning, he agreed that he was also charged after this incident and pleaded guilty to misdemeanor possession.

Counsel testified that his law practice included mostly criminal cases. He was appointed to represent the Petitioner at the Petitioner's arraignment. Counsel testified that he filed a discovery motion, reviewed the discovery material and met with the

Petitioner multiple times to discuss possible defenses. He and the Petitioner decided upon a two-prong strategy: 1) adduce evidence that the Petitioner possessed the drugs for personal use in hopes that the jury would return a verdict for simple possession rather than felony possession; and 2) point out discrepancies between Investigator Schrotberger's testimony at the preliminary hearing and at trial to show that the Petitioner's actions did not place the officers in reasonable fear for their lives.

Counsel testified that he used the preliminary hearing transcript during his cross-examination of Investigator Schrotberger. Counsel recalled that there were "few" discrepancies and that they were "slight at best," but that he raised the inconsistencies during cross-examination. Counsel testified that he relied on various factors indicating whether a person possesses drugs with the intent to sell in support of the defense theory that the Petitioner possessed the drugs for personal use. He said that he focused on the small amount of drugs found, the fact that the Petitioner did not have any drug paraphernalia associated with selling drugs, and there was no one around to sell the drugs to but the co-defendant. Counsel said that he could not recall the specifics but that the co-defendant was either not available or unwilling to testify at trial due to his pending charges. He agreed that calling a witness with a criminal history like Mr. Davis's created a risk of an "unfair or collateral taint" to the Petitioner.

Counsel testified that the Petitioner made the decision not to testify at trial. He agreed that a *Momon* hearing was held to confirm the Petitioner's decision and that the Petitioner signed a form indicating his decision not to testify. Counsel said that he and the Petitioner discussed the decision of whether to testify "extensively."

Following the evidence, the post-conviction court found that the Petitioner had not proven his allegations by clear and convincing evidence and denied relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner maintains that he received the ineffective assistance of counsel at trial. He argues that: (1) Counsel failed to adequately cross-examine Investigator Schrotberger at trial; (2) Counsel failed to call the co-defendant at trial to testify that the Petitioner possessed the cocaine for personal use; and (3) Counsel "talked him out of testifying" at trial. The State responds that the post-conviction court properly concluded that the Petitioner failed to demonstrate his claims through clear and convincing evidence. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional

- 4 -

right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### A. Cross-Examination of Investigator Schrotberger

The Petitioner argues that Counsel failed to effectively cross-examine Investigator Schrotberger about inconsistencies in his statements. After the hearing, the post-conviction court made the following findings as to this issue:

I recall the very specific things [the Petitioner] is alluding to as to the gun in the waistband, the opening of the jacket and the issue of whether or not the trier of fact determined whether he pulled a gun and/or pointed a gun or whether or not the officers in this case had reason to fear serious bodily injury, which was an element of the aggravated assault with a deadly

weapon. . . . It appears from the testimony, and I give credibility to the testimony of [Counsel] in this case, that he had the benefit of that transcript, he reviewed the inconsistencies. In his opinion they might have been slight, but he did go over those inconsistencies during the course of the trial itself to try to set forth to the trier of fact what might be something for their consideration that would weigh toward . . . the defense. . . . I do not find in any way that there was ineffective assistance of counsel or that [Counsel] fell below any standard in that regard.

The evidence does not preponderate against the post-conviction court's findings as to this issue. Counsel testified that he had the transcript from the preliminary hearing at trial and that he used the transcript during his cross-examination of Investigator Schrotberger. Counsel opined that the inconsistencies were slight, but he raised the inconsistencies in front of the jury for their consideration. The post-conviction court found Counsel's testimony credible.

We agree with the post-conviction court that the Petitioner has failed to prove this allegation by clear and convincing evidence. Counsel outlined his two-prong defense at trial developed after reviewing the discovery in the case and meeting multiple times with the Petitioner. Based upon the trial strategy aimed at undermining the State's theory of the aggravated assault of the officers, Counsel identified discrepancies in the testimony and used the transcript during cross-examination to highlight those inconsistencies. The Petitioner has not shown or even suggested what more Counsel could have done as to this issue. Accordingly, we conclude that Counsel was not ineffective in this respect.

### B. Co-defendant as a Witness

The Petitioner asserts that Counsel was ineffective because he failed to call his co-defendant as a witness to testify that the Petitioner was a drug user and not a drug dealer. In denying relief, the post-conviction court made the following findings as to this allegation:

Mr. Davis testified under oath he's a convicted felon. . . . In fact, Mr. Davis was a Co-Defendant and could not have been forced to testify, was not available to [Counsel] for extensive discussion about the case, and there was some dangers as outlined by [Counsel], his experienced attorney handling criminal cases, as to what could have gone negative as to Mr. Davis even if he had chosen to testify on behalf of the [Petitioner].

The evidence does not preponderate against the post-conviction court's findings. Counsel testified that Mr. Davis's charges related to this incident were not yet resolved at

the time of the Petitioner's trial, thereby making Mr. Davis unavailable for discussion and unwilling to testify on the Petitioner's behalf. Additionally, Mr. Davis testified at the post-conviction hearing that he pleaded guilty to simple possession in this case rather than an offense related to selling or delivering drugs. Accordingly, we conclude that Counsel was not deficient for failing to have Mr. Davis testify at trial.

### C. Decision Not to Testify

The Petitioner contends that he wanted to testify at trial but that Counsel "talked him out of testifying." The post-conviction court made the following findings as to this allegation:

> [I]t is the normal course, and it was in this case, for the Court to question the [Petitioner] outside the presence of the jury, and not only question the [Petitioner] orally in court under oath on the record about whether he wants to testify or not, but he also signs a written form, and it's very clear that the Court made a clear finding that the [Petitioner] freely, voluntarily, knowingly, intelligently, and personally made a decision to waive his right to testify in this case. That was a strategy decision. He had his reasons at the time, and certainly there's been no fault on the part of [C]ounsel for that. And [Counsel] testified that he advised the [Petitioner] himself that, that he understood it and they went over it extensively and the [Petitioner] made a decision. He chose not to testify. And you can't change your mind after the fact and then claim that it was your lawyer's fault. That's not the way it works. . . . [T]he [Petitioner] did not testify at that trial by his own choice.

The evidence does not preponderate against the post-conviction court's findings. During the *Momon* hearing, the Petitioner testified that he was knowingly and willingly making the decision not to testify at trial. Additionally, he signed a form indicating the same. Counsel testified that he reviewed the Petitioner's right to testify "extensively" with him and that the Petitioner decided not to testify. Other than his bare assertion that Counsel "advised" him not to testify, there is nothing in the record to support the Petitioner's allegation that Counsel told him not to testify. Accordingly, the Petitioner has not proven that Counsel was deficient in this regard.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE